

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-18-00313-CV

———————————————

IN THE MATTER OF M.R.

———————————————

On Appeal from County Court at Law No. 1
Wichita County, Texas
Trial Court No. 50148-LR-D

———————————————

Before Sudderth, C.J.; Gabriel and Pittman, JJ.
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

The 16th Judicial District Court in Denton County found appellant M.R. incompetent to stand trial on a pending criminal charge and ordered him committed to receive mental-health services to restore his competency. Dr. Anita Deanda, M.R.'s treating physician at the North Texas State Hospital, filed an application to administer psychoactive medication under section 574.104 of the health and safety code. *See* Tex. Health & Safety Code Ann. § 574.104 (West 2017). Following a hearing, the trial court granted the application and, pursuant to section 574.106, ordered that M.R. could be administered the psychoactive medications regardless of his refusal. *See id.* § 574.106 (West 2017). M.R. was entitled to appeal this order, and he has done so. *See id.* §§ 574.070, .108 (West 2017).

Among other things, before a trial court may issue an order authorizing the administration of psychoactive medication to a patient under section 574.106, it must find by clear and convincing evidence[1] that treatment with the proposed medication is in the best interest of the patient. *See id.* § 574.106(a-1)(1), (2). The trial court made that finding here. In his sole issue, M.R. contends the trial court's order should be reversed because the evidence is factually insufficient to support the best-interest

---

[1]Clear and convincing evidence is a degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010).

finding. Because factually sufficient evidence supports the challenged finding, we affirm.

## I. STANDARD OF REVIEW AND APPLICABLE LAW

When, as here, the burden of proof is clear and convincing evidence, we apply a heightened standard of review to evidentiary sufficiency challenges. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *In re T.C.*, No. 02-17-00201-CV, 2017 WL 2838174, at *3 (Tex. App.—Fort Worth July 3, 2017, no pet.) (mem. op.). As we have previously stated, when reviewing the evidence for factual sufficiency under the clear-and-convincing standard,

> we inquire whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. We consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. In so doing, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. We examine the entire record to determine whether the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction; if it is, the evidence is factually insufficient.

*In re M.T.*, Nos. 02-17-00011-CV, 02-17-00012-CV, 2017 WL 1018596, at *5 (Tex. App.—Fort Worth Mar. 16, 2017, no pet.) (mem. op.) (citations omitted).

In making a finding that treatment with the proposed medication is in the best interest of the patient, the trial court must consider the following: (1) the patient's expressed preferences regarding treatment with psychoactive medication; (2) the patient's religious beliefs; (3) the risks and benefits, from the perspective of the

3

patient, of taking psychoactive medication; (4) the consequences to the patient if the psychoactive medication is not administered; (5) the prognosis for the patient if the patient is treated with psychoactive medication; (6) alternative, less intrusive treatments that are likely to produce the same results as treatment with psychoactive medication; and (7) less intrusive treatments likely to secure the patient's agreement to take the psychoactive medication.[2]  Tex. Health & Safety Code Ann. § 574.106(b); *T.C.*, 2017 WL 2838174, at *6.

## II.  DISCUSSION

We turn to examine the evidence in the record in relation to the applicable best-interest factors.

### 1.  M.R.'s Expressed Preferences

The specific psychoactive medications that Dr. Deanda sought authorization to administer to M.R. were antidepressants, antipsychotics, anxiolytics, hypnotics, sedatives, and mood stabilizers.  It is undisputed that M.R.'s clearly expressed preference was not to have those medications administered to him.  In her application,[3] Dr. Deanda noted that M.R. was "refus[ing] meds," and during the hearing, she testified that M.R. had refused to take those medications voluntarily, that he stated he did not need them, and that he believed he needed yoga or breathing

---

[2]M.R. does not argue that the trial court failed to consider any of these factors.

[3]The trial court took judicial notice of the application during the hearing.

4

treatments. M.R. also told the trial court that he did not need antipsychotics because he was not psychotic. Thus, given M.R.'s strong preference not to take the psychoactive medications Dr. Deanda sought to administer, this first factor weighs against the trial court's best-interest finding. *See T.C.*, 2017 WL 2838174, at *6 (noting that appellant's preference not to take the medication weighed against the trial court's best-interest finding).

## 2. M.R.'s Religious Beliefs

Neither party presented evidence concerning M.R.'s religious beliefs, and the record does not reflect that M.R. based his objection to the medications Dr. Deanda sought to administer in any way on his religious beliefs. We conclude this factor is neutral and does not weigh against or in favor of the trial court's best-interest finding.

## 3. The Risks And Benefits, From M.R.'s Perspective, of Taking Psychoactive Medication

We consider what the record shows regarding the benefits of the proposed medication, and we begin by addressing an argument M.R. has raised that presents a question regarding what constitutes a "benefit" in this context. According to M.R., the only possible benefit to him of taking the proposed psychoactive medication that is supported by the evidence is that he would recover his mental health and competency. He argues, somewhat counterintuitively, that this result would not actually be a benefit to him. M.R. contends that is so because restoring his mental health and competency would lead to his standing trial on felony criminal charges,

5

thereby subjecting him to potential imprisonment. And as M.R. puts it in his brief, "It is difficult to imagine a county jail or state penitentiary that would afford [him] the creature comforts that he currently enjoys at the . . . North Texas State Hospital."

We disagree with M.R.'s suggestion that the restoration of his mental health and competency should not be considered a benefit to him because it may lead to his standing trial on pending criminal charges, which itself could result in his subsequent conviction and potential imprisonment. For one thing, the legislature has enacted a statutory scheme that authorizes trial courts to order the commitment of incompetent criminal defendants who are subject to confinement to receive mental-health services for the very purpose of restoring their competency to stand trial. *See, e.g.*, Tex. Code Crim. Proc. Ann. arts. 46B.002, 46B.071(a)(2) (West 2018). Acceding to M.R.'s argument would necessarily frustrate that statutory scheme. For another thing, agreeing with M.R. would require us to recast illness as beneficial and health as detrimental, which we will not do. We therefore consider the restoration of a mentally ill and incompetent patient to mental health and competence to be a benefit for purposes of analyzing the third statutory factor.

We turn now to the evidence relating to the benefits of administering the proposed medications to M.R.

Dr. Deanda testified that M.R. was being treated for schizophrenia, a recognizable form of mental illness. She also stated that M.R. had chronic psychosis. Dr. Deanda said that when M.R. first came to the hospital, he had auditory

6

hallucinations and was very agitated. She further testified that he "currently talks to unseen others" and that he did bizarre things, such as urinating beside his roommate's bed. She testified that he became agitated and angry very easily and that he had paranoia. Dr. Deanda also stated that about a week before the hearing, M.R. had to be placed in restraints and had to be given emergency medication because he was being aggressive and was presenting a danger to others. Dr. Deanda said that M.R.'s mental illness presented a continued danger to others at the hospital, as well as to himself because his aggressive behavior toward others would cause them to retaliate against him.

As for the benefits of taking the medication, although M.R. maintained that the medications Dr. Deanda sought to administer would not help him, Dr. Deanda testified that he had previously been administered those medications under a court order and that he had responded positively to them. Dr. Deanda stated that she believed the medications would help restore M.R.'s competency to stand trial and also said that because M.R. had responded positively to the medications when he took them in the past, she expected he would respond similarly if he started taking them again. Further, in her application, Dr. Deanda indicated that if M.R. received the proposed medication, his prognosis was fair.

With respect to the risks associated with taking the medication, Dr. Deanda acknowledged that some of the proposed medications had potentially fatal and debilitating side effects. But she testified that she was trained to recognize the

7

potential adverse side effects and that if the trial court authorized her to administer the medications, she would be on the lookout for any of those side effects. Dr. Deanda testified that taking the medications and regaining his mental health was in M.R.'s best interest.

The foregoing evidence supports a conclusion that the benefits of administering the medications to M.R. were substantial and the risks largely minimal. Although Dr. Deanda acknowledged that some of the proposed medications had potentially severe side effects, she did so only in the abstract and did not indicate that she feared M.R. would likely experience those side effects. In fact, as noted above, she testified to the contrary. With respect to M.R. specifically, Dr. Deanda testified that he had previously taken the same medications she sought to administer to him, that he had responded positively to the medications, and that she expected the same result to occur if she were to administer them to him with the trial court's authorization. She noted in her application that if the medications were administered to M.R., his prognosis was fair. And she assured the trial court that if it authorized her to administer the medications, she would be on the lookout for potential side effects, something she was specially trained to recognize. Because the evidence supports the conclusion that the benefits of administering the medication to M.R. were substantial and the risks low, we conclude this factor weighs in favor of the trial court's best-interest finding.

8

### 4. The Consequences to M.R. if the Medication is Not Administered

In her application, Dr. Deanda stated that the consequences of not administering the medications would be M.R.'s continued disability and hospitalization, as well as the inability to reconstitute his competency to stand trial. We also consider Dr. Deanda's testimony regarding M.R.'s aggressive and bizarre behavior to be relevant to this factor. She stated that M.R.'s mental illness presented a continued danger to himself because it was leading to behavior toward others that could cause them to retaliate against him and hurt him. Although M.R. argues that Dr. Deanda had not treated him long enough to opine as to the consequences of not administering the medication, she was aware of M.R.'s prior court-ordered course of treatment in rendering her opinion. The trial court could have reasonably found this evidence to be clear and convincing. *See, e.g.*, *State ex rel. D.W.*, 359 S.W.3d 383, 386–87 (Tex. App.—Dallas 2012, no pet.); *State ex rel. D.C.*, No. 12-05-00138-CV, 2005 WL 3725079, at *6–7 (Tex. App.—Tyler Jan. 31, 2006, no pet.) (mem. op.). Accordingly, the trial court could have reasonably concluded based on Dr. Deanda's testimony that failing to administer the medication to M.R. would lead not only to a continued inability to restore his mental health and competency but also to a continued physical danger to his person. Thus, this factor weighs in favor of the trial court's best-interest finding.

### 5. The Prognosis For M.R. if he is Treated With Psychoactive Medication

We have already discussed the evidence relevant to this factor. Dr. Deanda stated in her application that M.R.'s prognosis was fair if he were administered the medications. And she testified that her expectation was that the medications would lead to the restoration of his mental health and competency, which she based in part on the fact that M.R. had responded positively to the same medications in the past. This factor weighs in favor of the trial court's best-interest finding.

### 6. Whether Any Alternative, Less Intrusive Treatments Are Likely to Produce The Same Results

Dr. Deanda testified that there were no alternatives to the medications she sought authority to administer that were likely to produce the same results as treatment with those medications. This factor weighs in favor of the trial court's best-interest finding.

### 7. Whether Any Less Intrusive Treatments Were Likely to Secure M.R.'s Agreement to Take The Medications

Dr. Deanda testified that there were no less intrusive treatments that were likely to secure M.R.'s agreement to take the medications she sought to administer to him, which she testified he needed to take in order to regain his mental health and competency. This factor weighs in favor of the trial court's best-interest finding.

In sum, our review of the entire record in relation to section 574.106(b)'s best-interest factors reveals that one factor—M.R.'s expressed preferences—weighs against the trial court's finding. *See* Tex. Health & Safety Code Ann. § 574.106(b)(1). One

factor—M.R.'s religious beliefs—is neutral and does not weigh in favor of or against that finding. *See id.* § 574.106(b)(2). And the remaining factors weigh in favor of the finding. *See id.* § 574.106(b)(3)–(7). Having reviewed the entire record, we conclude that the trial court could have reasonably formed a firm belief or conviction that treatment with the proposed psychoactive medication was in M.R.'s best interest. *See T.C.*, 2017 WL 2838174, at *6–7 (holding factually sufficient evidence supported trial court's best-interest finding despite appellant's preference not to take the medication); *In re M.H.*, No. 02-16-00160-CV, 2016 WL 4411114, at *5–6 (Tex. App.—Fort Worth Aug. 19, 2016, no pet.) (mem. op.) (holding factually sufficient evidence supported trial court's best-interest finding despite appellant's preference not to take the medication and his religious objections to being administered the medications). Accordingly, we overrule M.R.'s sole issue.

## III. CONCLUSION

Having overruled M.R.'s sole issue, we affirm the trial court's order authorizing the administration of psychoactive medication. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

Lee Gabriel
Justice

Delivered: January 3, 2019

11